## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JUSTO COLUMBIE ARGOTA,  )
)
   **Petitioner,**  )
)
   **vs.**    )  **Case No.  CIV-10-344-F**
)
DAVID MILLER, Warden, )
)
   **Respondent.**  )

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus.  United States District Judge Stephen P. Friot has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  A response has been filed, and Petitioner's time to file a reply has lapsed.  Thus, the matter is at issue.  For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his conviction of attempting to kill another, following a jury trial, for which he was sentenced to twenty years imprisonment and fined $10,000.  Case No. CF-2006-180, District Court of Texas County; Petition, 2-3.[1]  On direct appeal, the Oklahoma Court of Criminal Appeals affirmed Petitioner's conviction and sentence.  <u>Argota v. State</u>, No. F-2007-403 (Okla. Crim. App. June 23, 2008) (attached to Response as Ex. 3); Petition, 3.  Petitioner then filed an application for post-conviction relief,

---

[1]The page numbers cited for the petition are the pre-printed numbers in the upper right hand corner of the "form" petition.  Page 2 is actually the first page of the petition.

which the trial court denied.  <u>State v. Argota</u>, No. CF-2006-180 (Texas County District Court, Oct. 6, 2009) (attached to Response as Ex. 4); Petition, 4.  Petitioner appealed the denial to the Oklahoma Court of Criminal Appeals which affirmed the trial court's decision.  <u>Argota v. State</u>, No. PC-2009-940 (Okla. Crim. App. Feb. 10, 2010) (attached to Response as Ex. 5); Petition, 5.

Petitioner raises nine grounds for relief.  In Ground One, he contends that he was denied due process of law because the State did not proffer sufficient evidence to show that he possessed the requisite intent to kill his victim.  Petition, 6.  In Ground Two, Petitioner alleges that he was denied effective assistance of trial counsel because his trial counsel "labored under an actual conflict of interest" which prejudiced Petitioner.  Petition, 7.  In Ground Three, Petitioner claims that he was denied due process of law when the trial court abused its discretion, rendering his trial unfair.  Petition, 10.[2]  In Ground Four, Petitioner argues that he was denied effective assistance of counsel.  Petition, 10.  In Ground Five, Petitioner contends that the trial court's admission of improper jury instructions denied him his right to a fair trial and due process of law.  Petition, 11.  In Ground Six, Petitioner raises a <u>Batson</u> claim, alleging that the State peremptorily struck potential jurors for improper motives. Petition, 11.  In Ground Seven, Petitioner claims that his appellate counsel rendered ineffective assistance of counsel by failing to raise "meritorious issues" which he raised in his application for post-conviction relief.  Petition, 11a.  In Ground Eight, Petitioner argues

---

[2]Petitioner inserts four unnumbered, typewritten pages after page 9 and omits pages 10 and 11.  Accordingly, the undersigned refers to these pages as "10," "11," "11a," and "11b" respectively.

that he was denied his right to consular assistance as guaranteed under the Vienna Convention on Consular Relations ("Vienna Convention"). Petition, 11a. In Ground Nine, Petitioner contends that he was denied due process of law because he was not provided trial transcripts at the State of Oklahoma's expense. Petition, 11b.

## I. FACTUAL BACKGROUND[3]

Petitioner, a Cuban national with visa status, lived and worked in Guymon, Oklahoma, from 1998 to March 2006. During that time, he became a frequent customer of Continental Credit where he met and developed romantic feelings for Rocio Olivas, a then-employee of Continental Credit. In March 2006, Petitioner began a new job in Midland, Texas, with a normal work schedule of working sixty days straight and then having ten days off. On May 20, 2006, Petitioner returned from work to his home in Guymon and he began to drink heavily. On May 23, 2006, he entered Continental Credit to apply for a loan, which Ms. Olivas denied because he did not work in the Guymon area. That night he went to a local flea market and purchased a hunting knife and leather sheath. The next day, May 24, 2006, at around noon, Petitioner walked into Continental Credit and sat there for quite some time. During this time, Ms. Olivas was the only employee in the office. Eventually, Petitioner got up and used the back bathroom and then asked Ms. Olivas for a cup of water. Ms. Olivas retrieved the water, and as she turned around, Petitioner grabbed her and stabbed her multiple

---

[3]This summary is taken from the briefs on direct appeal and is intended only as an introduction. See Response, Ex. 1, at 2-4, Ex. 2, at 1-2. The record citation to relevant facts will be provided in the discussion which follows.

times in her torso and arm and then kicked her as she fell on the ground. Shortly thereafter, a coworker, Sephira Martinez, returned from lunch and saw Ms. Olivas slumped over and Petitioner standing in the back of Continental Credit. Ms. Olivas yelled at Ms. Martinez to call the police because Petitioner had stabbed her. Petitioner grabbed Ms. Martinez' wrists and asked her not to tell anyone, during which time Ms. Olivas called 911. Petitioner then ran out of Continental Credit and was eventually apprehended at a vacant house in Guymon. The hunting knife was recovered from the alleyway behind Continental Credit and the sheath was in Petitioner's possession when he was arrested in the vacant house.

## II. STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" Thaler v. Haynes, __ U.S. __, 130 S. Ct. 1171, 1173 (2010). A state

court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. Williams, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411.

## IV. DISCUSSION

As a preliminary matter, the undersigned notes Respondent's argument that the Court should apply the procedural bar rule to the claims raised in Grounds Four through Eight. Response, 17. The Court need not address the issue of procedural bar as these claims are more easily addressed on the merits. Miller v. Mullin, 354 F.3d 1288, 1297 (10th Cir. 2004); see also Fields v. Gibson, 277 F.3d 1203, 1217 (10th Cir. 2002) ("We need not review the district court's conclusion that this claim is procedurally barred because we can easily find it fails on the merits."). Respondent's substantive arguments regarding Grounds Four through Eight will be discussed as they become applicable.

### A. GROUND ONE–INSUFFICIENT EVIDENCE OF INTENT

Petitioner contends that the State failed to prove the intent element of attempting to kill another–namely that in attacking Ms. Olivas, he acted with the intent to cause her death. Petition, 6. Petitioner does not provide any further argument in support of this ground for relief. However, in construing Petitioner's arguments broadly, the undersigned understands

Petitioner to be incorporating a similar argument made in his brief on direct appeal to the Oklahoma Court of Criminal Appeals. In that brief, Petitioner argued that the State failed to prove the intent element beyond a reasonable doubt because it failed to prove that Petitioner was not voluntarily intoxicated when he attacked Ms. Olivas. Response, Ex. 1, at 8. In support, Petitioner argued that the trial testimony of several witnesses showed he was intoxicated on the day of and the days leading up to the attack. Response, Ex. 1, at 9-11. Petitioner also pointed to a statement he made to Ms. Olivas while attacking her that he only wanted to make her suffer, not kill her, as evidence of his lack of intent to kill Ms. Olivas. Response, Ex. 1, at 10. Petitioner further argued that the State failed to present any reliable evidence that he was not intoxicated on the day of the attack. Response, Ex. 1, at 11. Thus, Petitioner argued that his conviction should be reversed because the State failed to present sufficient evidence of intent. Response, Ex. 1, at 12.

Respondent responds that the jury was correctly instructed on the defense of voluntary intoxication and that instruction tasked the jury with the duty to weigh the evidence and determine if Petitioner's voluntary intoxication made it impossible for him to form the specific intent to kill. Response, 7. In support of the jury's finding, Respondent argues that little evidence was produced at trial to show that Petitioner was intoxicated at the time of the stabbing but that the evidence showing that Petitioner intended to kill Ms. Olivas was overwhelming. Response, 7-10. Thus, Respondent contends that there was sufficient evidence for the jury to find that Petitioner intended to kill Ms. Olivas and that the Oklahoma Court of Criminal Appeals' finding regarding the sufficiency of the evidence was not

contrary to or an unreasonable application of federal law. Response, 10-11.

In reviewing this claim on direct appeal, the Oklahoma Court of Criminal Appeals applied the relevant law regarding a sufficiency of the evidence claim and found, "The trial evidence was sufficient for any rational fact finder to conclude that voluntary intoxication did not prevent [Petitioner] from forming an intent to kill and that he stabbed the victim with the intent to kill her." Response, Ex. 3, at 2.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at his trial "does not focus on whether the trier of fact made the <u>correct</u> guilt or innocence determination, but rather whether it made a <u>rational decision</u> to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. <u>Lucero v. Kerby</u>, 133 F.3d 1299, 1312 (10th Cir. 1998). In applying this standard, the reviewing court "may not weigh conflicting evidence nor consider the credibility of witnesses," but "must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" <u>Messer v. Roberts</u>, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting <u>Grubbs v. Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993)). "The inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, known or not, is not considered." <u>Torres v. Mullin</u>, 317 F.3d 1145, 1151 (10th Cir. 2003) (citation omitted).

These standards "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. Petitioner was convicted of attempting to kill another under Okla. Stat. tit. 21, § 652(C), which states:

> Any person who commits any assault and battery upon another . . . by means of any deadly weapon, or by such other means or force as is likely to produce death, or in any manner attempts to kill another . . . shall upon conviction be guilty of a felony punishable by imprisonment in the State Penitentiary not exceeding life.[4]

Thus, the elements of attempting to kill another are (1) an attempt to kill, (2) another person, (3) by committing an assault and battery with a deadly weapon, (4) with the intent to cause death. Oklahoma Uniform Jury Instructions–Criminal § 4-8 (contained in Original Record, 90).

In In re Winship, 397 U.S. 358, 364 (1970), the United States Supreme Court held that the Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." And, as noted, Jackson v. Virginia, 443 U.S. 307, 319 (1979), provides that sufficient evidence supports a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Under 28 U.S.C. § 2254(d), a federal habeas court applies the Jackson standard with an additional layer of

_____

[4]It appears the statute was amended in 2007 to increase the range of punishment from imprisonment for not more than twenty years, which was the applicable punishment when Petitioner was convicted, to not more than life.

deference. Torres v. Lytle, 461 F.3d 1303, 1311 (10th Cir. 2006) (issue of sufficiency of the evidence primarily legal one and appropriate standard of deference forbids granting relief unless adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law).

Under Oklahoma law, mere consumption of alcohol is not enough to raise a defense of voluntary intoxication. Instead, the defendant must show that the voluntary intoxication negated the intent element of a specific intent crime. See Frederick v. State, 37 P.3d 908, 942 (Okla. Crim. App. 2001). Thus, "'[a] defense of voluntary intoxication requires that a defendant, first, be intoxicated and, second, be so utterly intoxicated, that his mental powers are overcome, rendering it impossible for a defendant to form the specific criminal intent . . . element of the crime.'" Simpson v. State, 230 P.3d 888, 899 (Okla. Crim. App. 2010) (second alteration in original) (quoting McElmurry v. State, 60 P.3d 4, 23 (Okla. Crim. App. 2002)) reh'g granted on other issue, __ P.3d __, 2010 WL 2949909 (Okla. Crim. App. 2010). If a defendant makes a prima facie showing sufficient to raise a defense of voluntary intoxication, the jury must then decide whether the defendant was so intoxicated as to be unable to form the required specific criminal intent. Jackson v. State, 964 P.2d 875, 892 (Okla. Crim. App. 1998) (per curiam); Norman v. State, 648 P.2d 1243, 1245 (Okla. Crim. App. 1982).

Petitioner did not testify at trial, but through cross-examination of the State's witnesses, he presented evidence that he was intoxicated and that he did not intend to kill Ms. Olivas when he stabbed her. The trial judge instructed the jury on the defense of involuntary

intoxication, and at that point, it became a question of fact for the jury to decide whether Petitioner was so intoxicated as to be unable to form the requisite intent to kill necessary to support a conviction for attempting to kill another. For the reasons stated below, the Oklahoma Court of Criminal Appeals' decision that there was sufficient evidence for any rational trier of fact to conclude that voluntary intoxication did not prevent Petitioner from forming the requisite intent to kill is neither contrary to nor an unreasonable application of clearly established federal law nor is it an unreasonable determination of the facts.

Contrary to what seems to be Petitioner's argument, mere evidence of intoxication is not enough under Oklahoma law to make out a defense of voluntary intoxication. A defendant must also show that his intoxication negated the specific intent element of the crime. Thus, even assuming Petitioner was intoxicated at the time he attacked Ms. Olivas, Petitioner's argument must fail because the State presented the jury with sufficient evidence to prove Petitioner intended to kill Ms. Olivas.

On May 23, 2006, the day before the stabbing, Ms. Olivas denied Petitioner a loan through Continental Credit because company policy required the borrower to work in Guymon and Petitioner no longer worked in Guymon. Trial Tr., Vol. II, 161. In response, Petitioner pointed his finger at Ms. Olivas and told her she would regret denying him a loan. Trial Tr., Vol. II, 161. That night, Petitioner went to the flea market and purchased the knife used to stab Ms. Olivas. Trial Tr., Vol. I, 62. The next day, May 24, 2006, Petitioner stabbed Ms. Olivas four times–once in her right breast, once in her right arm, once in her upper left abdomen, and once in her lower right abdomen–and then kicked Ms. Olivas

several times after she fell to the ground.  Trial Tr., Vol. II, 168-79, 266-67.

By all accounts, Ms. Olivas' stab wounds and other injuries were quite severe. Witnesses present at the crime scene testified that Ms. Olivas lost a considerable amount of blood, and the EMT testified that he was not even remotely able to stop the bleeding of the three stab wounds to Ms. Olivas' torso while en route to the hospital.  Trial Tr., Vol. I, 80, 110, Vol. II, 198, 253.  Dr. Hianto Te, the surgeon who treated Ms. Olivas in Guymon, estimated that Ms. Olivas lost around 1000 cc's of blood and had another 2000 cc's trapped in her abdominal wall.  Trial Tr., Vol. II, 266, 268.  Dr. Te also testified that the attack caused Ms. Olivas' right lung to collapse and injured her liver, stomach, left kidney, pancreas, aorta, and spleen, requiring removal of her left kidney, her spleen, and half her pancreas.  Trial Tr., Vol. II, 267-69, 274.  Dr. Te testified that Ms. Olivas' blood pressure was too low to perform laproscopic surgery and open surgery was performed.  Trial Tr., Vol. II, 267-68.  After observing the extent of Ms. Olivas' injuries, Dr. Te decided to stop the bleeding to her aorta and have her flown to Wichita, Kansas, for comprehensive surgery because the hospital in Guymon was not equipped to handle injuries as serious as those to Ms. Olivas.  Trial Tr., Vol. II, 269-71.  Prior to boarding the airplane, Ms. Olivas' blood pressure plummeted, and she had to be taken back to the hospital where her endotracheal tube was repositioned before she was transported to Wichita.  Trial Tr., Vol. II, 254-57, 272. Dr. Te opined that Ms. Olivas was in critical condition upon presentation and would have died from massive bleeding within a few hours had she not received medical treatment.  Trial Tr., Vol. II, 271, 276.

The testimony of Lieutenant Jason Bond, the detective who interviewed Petitioner, also called into doubt the veracity of Petitioner's allegation that he was so drunk that he did not remember what happened. Lieutenant Bond testified that he interviewed Petitioner approximately four hours after the incident and that while there was a slight odor of alcohol about Petitioner, the Lieutenant did not believe Petitioner was intoxicated. Trial Tr, Vol. II, 245, 291, 300. According to Lieutenant Bond, Petitioner had no trouble remembering where he worked, the amount of his last two paychecks, where he cashed those checks, and the last time he was at work. Trial Tr., Vol. II, 291-93. However, when Lieutenant Bond asked Petitioner about what happened at Continental Credit, Petitioner responded that he had been drinking and did not remember. Trial Tr., Vol. II, 294. According to Lieutenant Bond, Petitioner did not indicate that he had a history of not remembering after drinking. Trial Tr., Vol. II, 294. Lieutenant Bond also testified that Petitioner was very open and relaxed when talking about his job but became defensive when asked about the attack. Trial Tr., Vol. II, 294-95. Petitioner also never indicated what his last memory was, what he remembered from the past two days, or when he regained his memory. Trial Tr., Vol. II, 296-97. Additionally, Petitioner never claimed to have experienced a "blackout" but merely claimed, without elaborating, that he did not remember what happened because he had been drinking. Trial Tr., Vol. II, 299, 301.

Petitioner's arguments to the contrary do not dictate a different result. In support of his argument that he was unable to form the necessary intent to kill Ms. Olivas, Petitioner pointed to evidence introduced at trial showing that he was known to drink heavily and that

he had been drunk in the days leading up to and possibly the day of the stabbing. Response, Ex. 1, at 9-11. Petitioner also recounted a comment he made to Ms. Olivas during the attack, to which she testified at trial, that he wanted only to make her suffer, not kill her. Response, Ex. 1, at 10. Petitioner also argued that the State failed to meet its burden because his blood alcohol level was not tested after his arrest nor were any sobriety tests given to him. Response, Ex. 1, at 11. All of this evidence was submitted to the jury and considered by them in reaching their verdict. As the jury's decision was not an unreasonable application of federal law or an unreasonable determination of the facts, Petitioner's arguments must fail. Accordingly, the undersigned recommends that relief be denied on Ground One.

## B. GROUND TWO–ACTUAL CONFLICT OF INTEREST

Petitioner argues that he was denied effective assistance of trial counsel because his trial counsel operated under an actual conflict of interest which adversely affected Petitioner. Petitioner does not provide any facts or further argument regarding this claim. However, in construing the petition broadly, the undersigned understands Petitioner to be incorporating a similar argument he made in his brief on direct appeal before the Oklahoma Court of Criminal Appeals. In that brief, Petitioner alleged that he originally retained Jim Loepp to represent him but that he fired Mr. Loepp at the arraignment due to dissatisfaction with his performance. Response, Ex. 1, at 13. Petitioner alleged that the trial court then appointed Robert Jaques as counsel through the Oklahoma Indigent Defense System. Response, Ex. 1, at 14. Petitioner claimed that Mr. Jaques held an interest in Mr. Loepp's practice and often "stood in" for Mr. Loepp's retained clients when Mr. Loepp was unavailable, including at

Petitioner's arraignment. Response, Ex. 1, at 14-15. Petitioner argued that Mr. Jaques' interest in Mr. Loepp's practice affected Mr. Jaques' performance because it caused Mr. Jaques to fail to adequately explore Petitioner's claim of actual innocence. Response, Ex. 1, at 16. Specifically, Petitioner claimed that Mr. Jaques did not meet with him to discuss his case and did not admit his clothes into evidence, even though they did not have any blood on them. Response, Ex. 1, at 15. Petitioner also claimed that Mr. Jaques did not emphasize the lack of forensic testing done on the knife and clothing at trial and did not introduce evidence regarding Petitioner's character in the community. Response, Ex. 1, at 15.

Respondent argues that Petitioner's only argument regarding a conflict of interest is that both Mr. Loepp and Mr. Jaques contracted with the Oklahoma Indigent Defense System to represent indigent defendants in Texas County and that this is not enough to establish a conflict of interest. Response, 13. Respondent then construes Petitioner's arguments to be asserting a claim of ineffective assistance of counsel for failure to introduce Petitioner's clothing into evidence and to mount a defense in addition to voluntary intoxication. Response, 13. Respondent claims that these arguments must fail because the evidence against Petitioner was overwhelming and because Mr. Jaques' decision not to introduce Petitioner's clothing into evidence was trial strategy and its introduction would not have affected the trial's outcome. Response, 14-15.

On direct appeal, the Oklahoma Court of Criminal Appeals found that Petitioner had not shown an actual conflict of interest and denied Petitioner's claim. Response, Ex. 3, at 3.

The Sixth Amendment right to effective assistance of counsel includes the "right to representation that is free from conflicts of interest." United States v. Bowie, 892 F.2d 1494, 1500 (10th Cir. 1990) (quoting Wood v. Georgia, 450 U.S. 261, 271 (1981)). Where, as here, the defendant did not object at trial, the defendant must demonstrate that "'an actual conflict of interest adversely affected his lawyer's performance.'" Bowie, 892 F.2d at 1500 (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). "An actual conflict of interest exists only if counsel was 'forced to make choices advancing . . . interests to the detriment of his client.' Furthermore, 'the petitioner must be able to point to specific instances in the record' that suggest his interests were damaged for the benefit of another party." Workman v. Mullin, 342 F.3d 1100, 1107 (10th Cir. 2003) (citations omitted) (quoting United States v. Alvarez, 137 F.3d 1249, 1251-52 (10th Cir. 1998)). "[A] mere theoretical division of loyalties" is insufficient. United States v. Carrasco, No. 01-2053, 54 Fed. Appx. 299, 300 (10th Cir. Dec. 20, 2002)[5] (citations omitted) (quoting Mickens v. Taylor, 535 U.S. 162, 171 (2002)). The undersigned finds that Petitioner has failed to present any evidence that his trial counsel operated under a conflict of interest which adversely affected his trial counsel's performance.

At the judgment and sentencing hearing, Petitioner was allowed to present to the trial court a motion, which among other things, asked the trial court to remove Mr. Jaques as his counsel because Mr. Jaques had entered into a conspiracy with Mr. Loepp to have Petitioner

---

[5]This and any other unpublished decision are cited pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

convicted. Judgment and Sentence Tr., 8-19. As evidence of this conspiracy, Petitioner claimed that Mr. Jaques and Mr. Loepp shared office space and clients and were companions. Judgment and Sentence Tr., 8-9, 16. Petitioner also claimed the Mr. Jaques had acted ineffectively in failing to introduce into evidence Petitioner's clothing and shoes, which Petitioner alleges did not have any blood on them. Judgment and Sentence Tr., 13. Additionally, Petitioner alleged that Mr. Jaques failed to communicate with him regarding his case. Judgment and Sentence Tr., 8, 18. Petitioner also alleged that Mr. Jaques did nothing to stop a conspiracy by the sentencing investigator who, in preparing the pre-sentence report, failed to interview people helpful to Petitioner. Judgment and Sentence Tr., 10-12.

In response, Mr. Jaques stated that he and Mr. Loepp were not partners and did not share office space or staff. Judgment and Sentence Tr., 21. Mr. Jaques stated that their only relationship was that he and Mr. Loepp both contracted with the Oklahoma Indigent Defense System to provide representation to indigent defendants in Texas County and they sometimes covered each other on cases, but most of the time they worked on their own cases. Judgment and Sentence Tr., 21. Mr. Jaques also stated that Mr. Loepp did not do or say anything that caused him (Mr. Jaques) to ineffectively represent Petitioner. Judgment and Sentence Tr., 36. Additionally, Mr. Jaques stated that while Petitioner's clothes were not admitted into evidence, pictures of those clothes were. Judgment and Sentence Tr., 23. Mr. Jaques also stated that he discussed the lack of blood on Petitioner's clothing and the lack of forensic testing done on cross-examination of the State's witnesses. Judgment and Sentence Tr., 23.

Mr. Jaques further stated that he discussed Petitioner's defenses with Petitioner, but he was reluctant to reveal his conversations with the Petitioner due to the attorney-client privilege. Judgment and Sentence Tr., 20. Mr. Jaques also elicited the names of people Petitioner wanted Mr. Jaques to call at the sentencing hearing but claimed that it was not in Petitioner's best interest to call many of them and Petitioner never responded to a further inquiry regarding potential witnesses. Judgment and Sentence Tr., 20, 24.

The trial court found that while Mr. Jaques did not admit Petitioner's clothes and shoes into evidence, he did bring out on cross-examination of the State's witnesses that there was no blood on the clothes or shoes. Judgment and Sentence Tr., 42, 44. The trial court also found that the testimony of the pawn shop owner who sold Petitioner the knife and sheath, the fact that the sheath was found in Petitioner's possession, and the short proximity of time between when the knife was found and Petitioner was arrested was sufficient to show beyond a reasonable doubt that Petitioner attacked Ms. Olivas and thus, obviated any need to perform forensic testing on the knife. Judgment and Sentence Tr., 43-44. Additionally, the court found that Mr. Jaques addressed each of Petitioner's concerns in his cross-examination of the State's witnesses. Judgment and Sentence Tr., 44. The trial court stated that at the time of Petitioner's preliminary hearing, Mr. Loepp had moved from Beaver to Oklahoma City and found that there was no conspiracy between Mr. Loepp and Mr. Jaques to have Petitioner convicted. Judgment and Sentence Tr., 44-45, 47. The trial court also stated that nothing Petitioner raised was exculpatory and nothing showed the State withheld any evidence. Judgment and Sentence Tr., 46-47. Finally, the trial court applied the

ineffective assistance of counsel test found in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and found that Petitioner had failed to show that Mr. Jaques acted ineffectively. Judgment and Sentence Tr., 47-48.

The undersigned agrees with the trial court's analysis. Mr. Jaques denied that he and Mr. Loepp were business partners or shared office space, and Petitioner has failed to produce any evidence to the contrary. Thus, the only relationship that existed between Mr. Jaques and Mr. Loepp was that both contracted with the Oklahoma Indigent Defense System to provide representation to indigent defendants in Texas County and were friends. Neither of these facts is sufficient to support a finding of a conflict of interest. Cf. <u>Watson v. Poppell</u>, No. 04-6213, 154 Fed. Appx. 712, 715 (10th Cir. Nov. 16, 2005) (employment of both trial and appellate counsel at public defender's office did not create an inherent conflict of interest); <u>Berget v. Gibson</u>, No. 98-6381, 1999 WL 586986, at *13 (10th Cir. Aug. 5, 1999) (rejecting claim that friendship between trial and appellate counsel and employment together at Oklahoma County Public Defender's Office created a conflict of interest).

Further, even assuming a conflict of interest existed, Petitioner has failed to show that such a conflict adversely affected Mr. Jaques' trial performance. While Mr. Jaques did not introduce Petitioner's clothing into evidence, he did elicit testimony from the State's witnesses that there was no blood on Petitioner's hands or clothing and that there was no blood on Ms. Martinez after Petitioner grabbed her. Trial Tr., Vol. I, 125, 127, Vol. II, 202, 213. However, Lieutenant Bond testified in contrast that he observed a red substance which appeared to be blood on Petitioner's clothes. Trial Tr., Vol. II, 244. Thus, Mr. Jaques

18

apprised the jury of the possibility that there was no blood on those clothes, making admission of Petitioner's clothes unnecessary and possibly more harmful than helpful if in fact the jury did observe some dark spots on Petitioner's clothes and speculated it was blood.

Additionally, Mr. Jaques sufficiently presented evidence that no forensic testing was completed in this case. On cross-examination of Lieutenant Bond, Mr. Jaques showed that Lieutenant Bond failed to take prints from the knife, failed to test the knife, the sheath, or Petitioner's clothing and that neither a blood sample or hair fibers were collected from Petitioner. Trial Tr., Vol. II, 241-45. Mr. Jaques then argued during closing arguments that the State's evidence did not show that the knife discovered in the dumpster and allegedly belonging to Petitioner was the same knife used in the attack because no forensic testing was done on the knife and nothing shows what happened to the knife between the time Petitioner bought it and it was discovered in the dumpster. Trial Tr., Vol. II, 334-35. Finally, Mr. Jaques presented witnesses at the sentencing hearing who testified to Petitioner's good standing in the community. Judgment and Sentence Tr., 86-95. Accordingly, the undersigned recommends that relief be denied on Ground Two.

### C. GROUND THREE–ABUSE OF DISCRETION

Petitioner alleges that the trial court abused its discretion, rendering his trial fundamentally unfair and denying him due process. Petition, 10. In his petition, Petitioner lists the "supporting facts" as "See attached Statement of Facts." Petition, 10. However, his "Statement of Facts" does not raise any claims that are not specifically discussed in subsequent grounds for relief. Respondent urges the Court to deny relief on this claim

because it is not supported by any facts and it is impossible for Respondent to fashion a response to the claim. Response, 15-16.

This Court's function is not to "supply additional factual allegations . . . or construct a legal theory on a [litigant's] behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997), because doing so "borders on advocacy," and requires speculations as to what Petitioner wished to argue in support of his claims. See Richards v. Bellmon, 941 F.2d 1015, 1019 n.3 (10th Cir. 1991). Further, while it is true that as a pro se litigant, Petitioner is entitled to liberal construction of his pleadings, he nevertheless is obligated to "state the facts supporting each ground." Rule 2(c), Rules Governing Section 2254 Cases. The broad reading of the petition does not relieve Petitioner "of the burden of alleging sufficient facts on which a recognized legal claim could be based . . . [because he] requires no special legal training to recount the facts surrounding his alleged injury." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Petitioner does not provide any facts to support the claims raised in Ground Three, and as such, the Court is left only with generalized assertions of error, which is not enough to warrant habeas relief. See Graham v. Addison, No. 08-7071, 304 Fed. Appx. 670, 672 n.1 (10th Cir. Dec. 19, 2008) ("Because several of [Petitioner's] arguments are best characterized as 'generalized assertion[s] of error' or 'mere conclusory allegations,' 'we cannot fill the void by crafting arguments and performing the necessary legal research' for him." (quoting Garrett v. Selby Connor Maddux & Janner, 425 F.3d 836, 841 (10th Cir. 2005) (second alteration in original)), cert. denied, 130 S. Ct. 402 (2009). Accordingly, the undersigned

recommends that relief be denied on Ground Three.

## D. GROUND FOUR–INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner argues that his trial counsel rendered ineffective assistance of counsel for several reasons which will be discussed below. Petition, 10; Petition, Ex. 2.[6] In affirming the order denying post-conviction relief, the Oklahoma Court of Criminal Appeals found that Petitioner had not met his burden under Strickland to show that trial counsel was ineffective. Response, Ex. 5, at 2.

To establish that counsel was ineffective, a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984). Performance is deficient if counsel's "representation f[a]ll[s] below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Errors are prejudicial if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Counsel's performance is evaluated from the attorney's perspective at the time the assistance was rendered and considered in light of all the circumstances prevailing at that time. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Because both deficient performance and prejudice

---

[6]Petitioner attaches two exhibits to his petition: a statement of facts raised on direct appeal and a statement of facts raised on post-conviction relief. The undersigned refers to these as "Exhibit 1" and "Exhibit 2" respectively.

must be established to prove ineffective assistance, it is appropriate to consider whether prejudice is shown from an alleged error without determining whether counsel performed deficiently. Strickland, 466 U.S. at 697.

First Petitioner contends that his trial counsel erred in failing to subpoena an expert witness to testify regarding the defense of voluntary intoxication. Petition, Ex. 2. Respondent claims that this allegation is not supported by any facts and that Petitioner has not met the first prong of the Strickland test. Response, 27-28. To meet the first prong of the Strickland test with regard to trial counsel's failure to offer the testimony of an expert witness at trial, the petitioner must present some evidence as to what the expert's testimony would have been. See Long v. Roberts, No. 07-3326, 277 Fed. Appx. 801, 804 (10th Cir. May 8, 2008) ("Without some indication of the content to the potential expert witness testimony, we cannot conclude that [the petitioner's] counsel provided ineffective assistance."), cert. denied, 129 S. Ct. 239 (2008); Cummings v. Sirmons, 506 F.3d 1211, 1233 (10th Cir. 2007), cert. denied 128 S.Ct. 2943 (2008). Petitioner has not offered any evidence or otherwise indicated what an expert witness would have testified to regarding his defense of voluntary intoxication. Accordingly, Petitioner cannot prevail on this claim because he has failed to show that trial counsel's performance was constitutionally deficient in not calling an expert witness.

Next, Petitioner claims that his trial counsel rendered ineffective assistance in failing to inform him of his right to seek consular assistance under the Vienna Convention and for failing to seek such assistance for Petitioner. Petition, Ex. 2. Respondent contends that these

allegations are unsupported by any facts, and regardless, Petitioner has not shown he was prejudiced by counsel's failure to inform him of his right to seek consular assistance. Response, 29. The undersigned agrees that Petitioner has failed to show prejudice. Petitioner nowhere alleges that he would have availed himself of his right to seek consular assistance had he known of that right. Petitioner also does not indicate that the Cuban consulate would have rendered such assistance or that any assistance rendered would have affected the trial outcome in Petitioner's favor. Additionally, as already discussed, Petitioner's trial counsel vigorously represented Petitioner, raising the defense of involuntary intoxication and exposing weaknesses in the State's case. Further, the trial court provided Petitioner with an interpreter during trial and at each hearing before the trial court so that Petitioner was informed as to what was happening at trial. Preliminary Hearing Tr., 6; Trial Tr., Vol. I, 9, Vol. II, 144; Post-Trial Hearing Tr., 2; Judgment and Sentence Tr., 3. Accordingly, Petitioner cannot prevail on this claim.

Petitioner also alleges that his trial counsel rendered ineffective assistance of counsel in failing to object to the removal of potential jurors on the basis of race. Petition, Ex. 2. Respondent argues that the record does not support Petitioner's claim that potential jurors were removed solely based on race and urges the Court to deny relief on this claim. Response, 31. As discussed below, the record fails to support Petitioner's claims that the State exercised its peremptory challenges on the basis of race or that jurors were otherwise excused for race-based reasons. Accordingly, Petitioner has failed to show that his trial counsel's performance was constitutionally deficient in failing to object to the removal of

potential jurors and relief must be denied on this claim.

Petitioner alleges that his trial counsel rendered ineffective assistance of counsel in failing to preserve trial errors for appellate review by entering contemporaneous objections at trial. Petition, Ex. 2. Respondent argues that relief should be denied on this claim because Petitioner fails to allege any facts supporting this claim. Response, 32. Petitioner has failed to present any allegations regarding his trial counsel's failure to preserve trial errors for appellate review and there is no indication that the Oklahoma Court of Criminal Appeals failed to address an alleged error because it was not properly preserved. Accordingly, relief must be denied on this claim.

Finally, Petitioner alleges that his trial counsel rendered ineffective assistance of counsel in failing to move for a dismissal after the State concluded its case-in-chief and for failing to ask the trial court to instruct the jury on the defense on voluntary intoxication. The record clearly shows both that Petitioner's trial counsel demurred to the State's evidence after the State concluded its case-in-chief and that the jury was instructed on the defense of voluntary intoxication. Trial Tr., Vol. II, 279-80; Original Record, 63, 68, 94-97. Accordingly, the undersigned finds that Petitioner has failed to make out a claim of ineffective assistance of trial counsel and recommends that habeas relief be denied on Ground Four.

### E. GROUND FIVE–JURY INSTRUCTIONS

Petitioner argues he was denied his due process rights and his right to a fair trial when the trial court improperly instructed the jury on his defense of voluntary intoxication.

Petition, 11. In support of this claim, Petitioner alleges that his "prolonged use of intoxicant caused fixed mental defect and disorder, rendering him so intoxicated at time of offense as to be incapable of forming intent." Petition, Ex. 2.

Errors relating to jury instructions in a state criminal trial are not reviewable in a federal habeas corpus action "'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)). As emphasized by the Supreme Court in Henderson v. Kibbe, 431 U.S. 145, 154 (1977), "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("The question . . . is not whether the [challenged] instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process." (internal quotation marks omitted)). A petitioner's burden, therefore, to establish constitutional error based on an erroneous jury instruction, is a heavy one. Nguyen, 131 F.3d at 1357.

Petitioner does not state in what way the trial court failed to properly instruct the jury regarding voluntary intoxication. A comparison of the instructions the trial court read to the jury with Oklahoma's uniform jury instructions shows no significant variation between the two. Original Record, 94-97; Oklahoma Uniform Jury Instructions–Criminal §§ 8-35, 8-36, 8-38, 8-39. Accordingly, the undersigned recommends that relief be denied on Ground Five.

## F. GROUND SIX–<u>BATSON</u> CLAIM

Petitioner claims that jurors were excluded for improper motives. Petition, 11. Petitioner provides no other facts regarding his claim, but Respondent assumes Petitioner to be asserting a claim under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), that the State exercised its peremptory challenges on the basis of race. Response, 30. Respondent argues that habeas relief should be denied because Petitioner has failed to make the necessary showing to maintain a <u>Batson</u> claim and the record does not support such a claim. Response, 31. The Oklahoma Court of Criminal Appeals determined that Petitioner's <u>Batson</u> claim was procedurally barred. Response, Ex. 5, at 1.

To determine whether a <u>Batson</u> violation has occurred in the use of peremptory strikes during jury selection, the trial court engages in a three-part analysis. First, the defendant must make a prima facie showing that the strike has been exercised on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." <u>Johnson v. California</u>, 545 U.S. 162, 168 (2005) (quoting <u>Batson</u>, 476 U.S. at 93-94). Second, if the prima facie showing has been made, the burden shifts to the State to come forward with a race-neutral reason for the strike. <u>Johnson</u>, 545 U.S. at 168. Third, if a race-neutral explanation is tendered, the trial court must determine whether the defendant has proved purposeful racial discrimination. <u>Johnson</u>, 545 U.S. at 168. Under Tenth Circuit precedent, "'[t]he disposition of a <u>Batson</u> claim is a question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2).'" <u>Saiz v. Ortiz</u>, 392 F.3d 1166, 1175 (10th Cir. 2004) (quoting <u>Sallahdin v. Gibson</u>, 275 F.3d 1211, 1225 (10th Cir. 2002)).

The undersigned's review of the record reveals that there is no record of the race of the various members of the venire and reveals no defense challenges to the State's exercise of its peremptory strikes.[7] Without such information, Petitioner's <u>Batson</u> claim must fail under the first part of the <u>Batson</u> analysis because Petitioner failed to make a prima facie showing.

The trial court did make a record of the excusal for cause of three potential jurors and one potential alternate juror, all with Spanish surnames. Assuming that Petitioner is objecting to the trial court's decision to excuse those jurors for cause, that claim must also fail because <u>Batson</u> applies to peremptory challenges and not challenges for cause. <u>United States v. Abbey</u>, No. 97-1284, 1998 WL 321204, at *6. (10th Cir. June 5, 1998) (<u>Batson</u> applies only to peremptory strikes). Further, Petitioner has not shown that the trial court acted improperly or on the basis of race in excusing the jurors for cause. The trial court excused Yvette Marquez and Vic Perez because both had contacts with Ms. Olivas and her family and neither felt they could serve as fair and impartial jurors. Trial Tr., Vol. I, 22-23. The trial court excused Mary Beth Cruz because she had contact with Petitioner through her employment at an employment placement agency, had had conversations regarding the facts of the case, and felt she could not serve in a fair and impartial manner. Trial Tr., Vol. I, 23. The trial court excused Lorenzo Avalos, a potential alternate juror, because he had problems understanding English which would have affected his ability to sit as a juror. Trial Tr. Vol.

---

[7]Petitioner's attorney did make a record before the trial began that out of approximately 70 jurors on the panel, only four were Hispanic. Trial Tr. Vol. I, 11-12.

I, 32.  Contrary to Petitioner's arguments, the record shows that the trial court's decision to excuse the above jurors was not based on race but on each juror's admission that he/she could not serve on the jury.  It is therefore recommended that relief be denied on Ground Six.

## G.  GROUND SEVEN–INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner claims that his appellate counsel rendered ineffective assistance in failing to raise on appeal the meritorious issues Petitioner raised in his application for post-conviction relief.  Petition, 11a.  Respondent argues that Petitioner cannot show ineffective assistance of appellate counsel because the claims that Petitioner raised in his application for post-conviction relief were not meritorious.  Response, 34.  The Oklahoma Court of Criminal Appeals reviewed this claim in Petitioner's post-conviction appeal and found that Petitioner had failed to satisfy the Strickland test.  Response, Ex. 5, at 2.

"The Strickland test also applies to claims of ineffective assistance by appellate counsel."  United States v. Gaines, No. 09-5104, 358 Fed. Appx. 34, 37 (10th Cir. Dec. 22, 2009) (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000)).  Further, in analyzing an ineffective assistance of appellate counsel claim based upon the failure to raise an issue on appeal, the habeas court should:

> [L]ook to the merits of the omitted issue, generally in relation to the other arguments counsel did pursue.  If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is

meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citations and internal quotation marks omitted). Unless there is a reasonable probability that the omitted claim would have resulted in a reversal on appeal, there is no ineffective assistance of appellate counsel. Neill v. Gibson, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).

Petitioner alleges that he raised the following claims in his application for post-conviction relief: (1) abuse of discretion by the trial court, (2) ineffective assistance of trial counsel, (3) improper jury instructions, (4) improper excusal of jurors under Batson, (5) denial of his right to consular assistance, and (6) failure of the State to provide transcripts at the State's expense for use in his post-conviction proceedings. Petition, 10-11b. The undersigned has already shown that Petitioner's claims of abuse of discretion by the trial court, ineffective assistance of trial counsel, improper jury instructions, and improper excusal of jurors under Batson are meritless. Additionally, for the reasons set forth below, Petitioner's claims of denial of consular assistance and failure to provide transcripts at the State's expense on post-conviction relief are meritless. Accordingly, Petitioner has failed to show that his appellate counsel rendered ineffective assistance in failing to raise those claims, and the undersigned recommends that relief be denied on Ground Seven.

## H. GROUND EIGHT–RIGHT OF CONSULAR ASSISTANCE

Petitioner argues that habeas relief is proper because he was denied his right of consular assistance under the Vienna Convention. Petition, 11a. Petitioner does not provide any facts to support this claim. However, in reviewing his "Statement of Facts" regarding

his claims raised in his application for post-conviction relief, it seems that Petitioner is claiming that he was "denied" his right to consular assistance because his trial counsel did not inform him of that right and did not seek consular assistance on behalf of Petitioner. Petition, Ex. 2.

To be eligible for federal habeas relief on this ground, Petitioner must show that the state court unreasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). However, the Constitution does not guarantee any right to consular access or assistance. Additionally, the United States Supreme Court has never found that the Vienna Convention confers enforceable rights on individuals. Sanchez-Llamas v. Oregon, 548 U.S. 331, 343 (2006). The Supreme Court's silence on whether the Vienna Convention confers on individuals an enforceable right is dispositive of the issue. Maldonado v. Thaler, No. 10-70003, 2010 WL 3155236, at *4 (5th Cir. Aug. 10, 2010) ("Because the [Supreme] Court has not yet decided whether an individually enforceable right exists, the district court's conclusion that [the petitioner] cannot seek to enforce such a right under AEDPA is not debatable or wrong."). Cf. Berghuis v. Smith, __ U.S. __, 130 S. Ct. 1382 (2010) (reversing Sixth Circuit grant of federal habeas relief on claim that jury venire was not fair-cross-section of community where Court had no "clearly established" procedures for evaluating such claims). Accordingly, the undersigned recommends that habeas relief be denied on Ground Eight.

## I. GROUND NINE–TRANSCRIPTS AT STATE EXPENSE

Petitioner claims that he was denied his due process rights where both the state district court and the Oklahoma Court of Criminal Appeals refused to provide a copy of his trial transcript at the State's expense for use in his post-conviction proceedings. Petition, 11b. Petitioner also claims that the State's failure to provide him those trial transcripts denied him access to the courts, equal protection, an unnamed state created right, and fair opportunity to present his claims. Petitioner, Ex. 2. Petitioner alleges that had the State provided those transcripts he could have had a "trained bilingual prison law clerk" review them to provide factual support for his claims on post-conviction and habeas review. Petition, Ex. 2.

Respondent argues that the decision to provide Petitioner with transcripts at the State's expense on his post-conviction proceedings is an issue of state law, making Petitioner's claim not cognizable on federal habeas review. Response, 36.

The Supreme Court upheld a federal statute which provided that indigent federal prisoners asserting a collateral challenge to their convictions under 28 U.S.C. § 2255 may receive a free trial transcript only if a judge certifies that the asserted claim is "not frivolous" and that the transcript is "needed to decide the issue," stating that no due process or equal protection guarantees were implicated by the statutory conditions contained in the federal statute. United States v. MacCollom, 426 U.S. 317, 324-26 (1976). The Tenth Circuit Court of Appeals has subsequently applied MacCollom to include state prisoners bringing actions under 28 U.S.C. § 2254 and state prisoners seeking collateral relief in state court. Ruark v. Gunter, 958 F.2d 318, 319 (10th Cir. 1992) ("[A]n indigent § 2254 petitioner does not have

a constitutional right to access a free transcript in order to search for error."); Tyler v. Owen, No. 98-5101, 1999 WL 100930, at *1 (10th Cir. Mar. 1, 1999) (denying habeas relief because Oklahoma does not require habeas petitioners to meet higher standard than that set forth in MacCollom).

Petitioner has not shown any need for a free copy of the trial transcript. See Tiger v. State, 859 P.2d 1117 (Okla. Crim. App. 1993). While neither Petitioner nor Respondent provided the Court with any documents pertaining to Petitioner's requests for records made in state court, a review of the Texas County docket, of which the undersigned takes judicial notice, indicates that Petitioner only requested a copy of the trial transcript after he filed his application for post-conviction relief. Case No. CF-2006-180, District Court of Texas County. Thus, Petitioner was quite capable of asserting and did assert his claims for post-conviction relief without access to the trial transcript.

Furthermore, Petitioner was provided with court-appointed appellate counsel on direct appeal who was able to obtain a copy of the trial transcript for purposes of the direct appeal. As a result, Petitioner was not entitled, under state law, to a free copy of his trial records, and the State's denial of Petitioner's request does not amount to a constitutional violation. Tyler, 1999 WL 100930, at *1.

Insofar as Petitioner is arguing that federal habeas relief should be granted because he was not provided with free copies of the trial transcripts in this action, his claim must also fail. To the Court's knowledge, Petitioner has not requested the State to provide him with a free copy of the trial transcript for use in his federal habeas action. Additionally, Petitioner

has not shown any need for a free copy of the trial transcript. See Sweezy v. Ward, No. 99-6131, 2000 WL 192904, at *1 (10th Cir. Feb. 17, 2000) (denying petitioner's request for trial transcript where petitioner only wanted transcript to search for trial errors). Respondent was required to file along with his answer a copy of the relevant portions of the transcript. Rule 5(c), Rules Governing Section 2254 Cases in United States District Courts. Thus, Petitioner has been furnished with portions of the transcript that Respondent deemed relevant in responding to Petitioner's grounds for relief, and Petitioner has not alleged that Respondent's filing was inadequate. Further, Petitioner is not required to provide citations to the record to support his claims but must only provide facts to the Court to support his claims. As Petitioner was present at trial with a translator, he should already know the facts relevant to his claims. Trial Tr., Vol. I, 9, Vol. II, 144. In effect, Petitioner is arguing that he needs a copy of the transcript to search for error. "Such 'naked allegations' are not cognizable under § 2254, and [this Court is] not compelled to allow [Petitioner] to conduct a search for error." Sweezy, 2000 WL 192904, at *1 (quoting Ruark, 958 F.2d at 319); see also Daniels v. Hargett, Nos. 95-6453, 96-6037, 1997 WL 107768, at *2 (10th Cir. Mar. 12, 1997) (district court did not err in failing to provide transcript where petitioner argued that trial court's rendition of facts differed from his memory); Ruark, 958 F.2d at 319 (claim that transcript was needed to prove allegations was insufficient to require its production). Accordingly, the undersigned recommends that habeas relief be denied on Ground Nine.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the petition for a writ of

habeas corpus be denied.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court on or before September 14, 2010, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 25th day of August, 2010.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE